IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY, etc., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION 16-0033-WS-M ) |
| JAMES P. TRAMMEL, *et al.*, | ) ) |
| Defendants. | ) ) |

ORDER

This matter comes before the Court on plaintiff's Motion for Summary Judgment (doc. 41), and its supporting exhibits and memorandum of law. The court-ordered briefing schedule having expired with neither response nor acknowledgment from defendants, the Motion is now ripe for disposition.[1]

**I.  Background.**

Plaintiff, Branch Banking and Trust Company, brought this collection action against four defendants, to-wit: James P. Trammel; Tire Centers, LLC; CTT Properties, LLC; and Prowler Supply, Inc.  The Complaint alleges causes of action against Trammel for breach of a promissory note (Count I), against CTT for breach of a guaranty (Count II), and against Tire Centers for

---

[1] By Order (doc. 44) entered on September 21, 2016, the undersigned fixed a deadline of October 18, 2016, for responses to the Motion.  That Order cautioned defendants that "[f]ailure to respond to this motion for summary judgment may result in final judgment being rendered in favor of the party who filed the motion, without a full trial. … [A] person against whom a motion for summary judgment is filed must oppose that motion by response as provided in the rules."  (Doc. 44, at 2.)  Notwithstanding these admonitions, defendants elected not to respond to the Motion for Summary Judgment.  The applicable briefing deadline passed well over a month ago, so the Motion is properly taken under submission at this time.  The fact that certain defendants are not represented by counsel in no way alters this conclusion because "even *pro se* litigants must comply with procedural rules and court orders."  *Johnson v. Champions*, 990 F. Supp.2d 1226, 1236 n.16 (S.D. Ala. 2014).

breach of an assignment of rents and demand for rents (Count III).  BB&T now moves for summary judgment as to Counts I and II, but not Count III.

The relevant facts underlying Counts I and II are undisputed for summary judgment purposes.[2]  On or about June 6, 2005, defendant Trammel executed and delivered to Colonial Bank, N.A., a Commercial Promissory Note and Security Agreement in the principal amount of $399,500 (the "Note").  (Stanton Aff. (doc. 42, Exh. B), ¶ 4 & Att. 1.)  The loan was secured by a Real Estate Accommodation Mortgage (the "Mortgage") executed by defendant Prowler Supply in favor of Colonial Bank.  (*Id.*, ¶ 4 & Att. 5.)[3]  In August 2009, Colonial Bank was shuttered by the Alabama State Banking Department, with the Federal Deposit Insurance Corporation ("FDIC") appointed as receiver.  (*Id.*, ¶ 5.)  Thereafter, plaintiff BB&T acquired the Note and other loan documents (including the Mortgage) from the FDIC pursuant to a Purchase and Assumption Agreement between BB&T and the FDIC.  (*Id.*)  As such, BB&T is now the holder of the Trammel loan.  (*Id.*, ¶ 4.)

On or about February 25, 2011, Trammel executed and delivered to BB&T a Modification, Renewal and Restatement of Note (the "Renewal Note") in the amount of $304,797.46.  (Stanton Aff., ¶ 4 & Att. 2.)  Pursuant to the terms of the Renewal Note, Trammel was to make monthly payments to BB&T in the amount of $2,756.42, culminating in a final

---

[2] Courts are generally obliged under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party.  *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007).  Thus, defendants' evidence (had they presented any) would be taken as true and all justifiable inferences would be drawn in their favor.  Here, however, defendants have not responded to the Motion for Summary Judgment.  Under the Federal Rules of Civil Procedure, when a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Rule 56(e)(2)-(3), Fed.R.Civ.P.  Thus, the Court's inquiry with respect to record facts is not whether defendants might have disputed facts alleged by plaintiff on summary judgment, but whether "the motion itself is supported by evidentiary materials."  *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

[3] Prowler Supply's involvement in this matter apparently stems from its status as a company owned and/or controlled by Trammel; indeed, Trammel signed the Mortgage in his capacity as President of Prowler Supply.  The Mortgage covered certain real property described therein, including the premises found at 1155 Telegraph Road in Mobile, Alabama (the "Mortgaged Property").

balloon payment of all remaining principal and accrued interest on or before August 25, 2012. (*Id.*) The Renewal Note specifically provided that Trammel agreed "to pay, in addition to principal and interest, all costs of collection, including but not limited to reasonable attorney's fees." (*Id.*) Also on February 25, 2011, defendant CTT (by and through Member/Manager James P. Trammel) entered into a Guaranty Agreement (the "Guaranty") with BB&T. (Stanton Aff., ¶ 4 & Att. 3.) By the express terms of that Guaranty, CTT "absolutely and unconditionally guarantee[d] to [BB&T] the due and punctual payment of any and all notes, drafts, debts obligations and liabilities" of Trammel individually. (*Id.*) The Guaranty further provided that it was "unlimited and applie[d] to all indebtedness of [Trammel], whether now existing or hereafter arising." (*Id.*) CTT expressly agreed in the Guaranty that it "shall be responsible for and shall reimburse the Bank for all costs and expenses (including reasonable attorneys' fees) incurred by the Bank in connection herewith, including without limitation costs and expenses incurred by the Bank in connection with its attempts to collect the indebtedness, obligations, and liabilities guaranteed hereby." (*Id.*)

Trammel failed to pay off the Renewal Note in a timely manner. To address that shortcoming, BB&T entered into a Forbearance Agreement with Trammel (as borrower), CTT (as guarantor) and Prowler Supply (as mortgagor) on September 20, 2013. (Stanton Aff., ¶ 4 & Att. 4.) The Forbearance Agreement acknowledged that Trammel was in default of his payment obligations under the Renewal Note, and further stipulated that he owed a balance of $334,698.12 in principal, interest and fees (including $294,004.66 in unpaid principal). By the terms of the Forbearance Agreement, all unpaid principal, interest and fees on the loan were due on the maturity date of January 11, 2014. (*Id.*)

The uncontested facts before the Court are that neither Trammel (as borrower) nor CTT (as guarantor) ever paid the amounts due under the Renewal Note and Forbearance Agreement. (Stanton Aff., ¶ 7.) Rather, Trammel defaulted under the loan and failed to cure same, and CTT failed and refused to perform under the Guaranty, as confirmed by the fact that the loan balance remains outstanding today. (*Id.*) Plaintiff's evidence is that the unpaid principal balance on the loan is $294,004.66. (*Id.*, ¶ 8.) Plaintiff also itemizes additional categories of damages claimed in this action as follows: (i) accrued interest of $62,285.11 (as of September 9, 2016); (ii) late fees of $1,219.71; (iii) "appraisals and environmental testing expenses" of $60,697.01; (iv) "property taxes and title work" of $22,903.32; (v) force-placed insurance in the amount of

$5,096.05; (vi) legal fees associated with environmental testing in the amount of $16,403.89; and (vii) legal fees, expenses and court costs incurred in this case in the amount of $17,889.92. (Stanton Aff., ¶¶ 8, 10 & Att. 6.)

## II.     Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

As mentioned, defendants elected not to respond to BB&T's Motion for Summary Judgment.  Applicable law is clear that "[s]ummary judgment is not automatically granted by virtue of a non-movant's silence." *Williams v. Aircraft Workers Worldwide, Inc.*, 832 F. Supp.2d 1347, 1352 (S.D. Ala. 2011).[4]  If a nonmovant fails to respond to a summary judgment motion,

---

[4]     "Even in an unopposed motion [for summary judgment], … the movant is not absolve[d] … of the burden of showing that it is entitled to judgment as a matter of law." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citations and internal quotation marks omitted); *see also One Piece of Real Property*, 363 F.3d at 1101 ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion … [and] ensure that the motion itself is supported by evidentiary materials."); Commentary to 2010 Amendments to Fed.R.Civ.P. 56(e) ("summary (Continued)

then the movant's assertions of facts supported by record evidence may be deemed "undisputed for purposes of the motion." Rule 56(e)(2), Fed.R.Civ.P. In that scenario, the court may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Rule 56(e)(3). In performing that analysis, a court is not obligated to read minds and ordinarily will not construct arguments or theories that a party has failed to raise.[5] As such, defendants' failure to proffer argument, evidence or authority in response to BB&T's Rule 56 Motion is at their peril. Such an omission imparts no burden on this Court to "fill in the blanks" in the legal analysis on defendants' behalf.[6] Nor is the Court obliged to scour uncited portions of the record in search of evidence that might bolster defendants' position. *See, e.g.,* Rule 56(c)(3) ("[t]he court need consider only the cited materials" on summary judgment); *King v. ST Aerospace Mobile, Inc.*, 2013 WL 2635926, *1 n.1 (S.D. Ala. June 11, 2013) ("This Court will not scour uncited portions of those exhibits in hopes of unearthing potentially helpful factual nuggets that the parties have not addressed.").

**III.   Analysis.**

    *A.     Liability of Trammel and CTT as to Counts I and II.*

The foregoing record facts are sufficient to demonstrate liability on the part of Trammel (as borrower) and CTT (as guarantor), and BB&T's entitlement to summary judgment, on the

---

judgment cannot be granted by default even if there is a complete failure to respond to the motion").

    [5]    *See, e.g., Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("district courts cannot concoct or resurrect arguments neither made nor advanced by the parties"); *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (noting that a litigant "cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions") (citation omitted).

    [6]    *See, e.g., Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. … Rather, the onus is upon the parties to formulate arguments ….") (citations omitted); *Godfrey v. Nationwide Vinyl Siding & Home Imp., LLC*, 912 F. Supp.2d 1320, 1330 (S.D. Ala. 2012) ("On summary judgment, the Court cannot 'fill in the blanks' to formulate a legal argument that a party has not."); *Minemyer v. B-Roc Representatives, Inc.*, 695 F. Supp.2d 797, 809 (N.D. Ill. 2009) ("[T]his is an adversarial system. It is not a court's task to research legal arguments on a party's behalf.").

breach of promissory note and breach of guaranty causes of action brought under Alabama law. *See generally City of Gadsden v. Harbin*, 148 So.3d 690, 696 (Ala. 2013) ("In order to establish a breach-of-contract claim, a plaintiff must show (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages.") (citations omitted); *Bahakel v. Drivetrain Automotive Supercenter, Inc.*, --- So.3d ----, 2016 WL 2610723, *4 (Ala.Civ.App. May 6, 2016) (similar).

Under well-settled Alabama law, "[a] promissory note is a form of contract; therefore, it must be construed under general contract principles." *Bockman v. WCH, LLC*, 943 So.2d 789, 795 (Ala. 2006); *see also Merchants Bank v. Head*, 161 So.3d 1151, 1154 (Ala. 2014) (same). In Count I of the Complaint, BB&T asserts a claim against Trammel for breach of the Note, Renewal Note and Forbearance Agreement. The summary judgment record contains ample uncontradicted evidence to establish Trammel's liability on Count I. Indeed, BB&T's unchallenged showing is that its predecessor in interest loaned money to Trammel; that Trammel entered into binding, enforceable promissory notes to repay BB&T (and/or its predecessor in interest) for those loaned funds, plus interest and fees; and Trammel subsequently defaulted on those contractual obligations. BB&T has also shown that it incurred damages pursuant to Trammel's breach of those promissory notes. Accordingly, with respect to Count I, plaintiff's Motion for Summary Judgment is **granted**. The Court expressly finds that there are no genuine issues of material fact as to liability, and that BB&T is entitled to judgment as a matter of law in its favor against Trammel as to the Count I breach of promissory note cause of action.

The reasoning and conclusion are very similar as to Count II, the breach of guaranty claim asserted against defendant CTT. Indeed, the legal standard under Alabama law for a breach of guaranty claim bears close resemblance to that governing promissory note-based claims. *See Eagerton v. Vision Bank*, 99 So.3d 299, 304 (Ala. 2012) ("Rules governing the interpretation and construction of contracts are applicable in resolving a question as to the interpretation or construction of a guaranty contract. … Absent fraud in the inducement, an absolute guaranty will be enforced according to its terms ….") (citations omitted); *see also Black Warrior Minerals, Inc. v. Fay*, 82 So.3d 650, 653 (Ala. 2011) (reading terms of guaranty in context and giving them their "ordinary, plain, and natural meaning"). Thus, "[e]very suit on a guaranty agreement requires proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under

the terms of the guaranty." *Adams v. Tractor & Equipment Co.*, 180 So.3d 860, 869 (Ala. 2015) (citation omitted). BB&T has adequately shown all elements of breach of guaranty, through uncontroverted proof of the existence of the Guaranty executed by CTT, default on the underlying note by Trammel, and nonpayment of guaranteed sums by CTT as guarantor.[7] As such, plaintiff's Motion for Summary Judgment is **granted** as to Count II. The Court expressly finds that there are no genuine issues of material fact as to liability, and that BB&T is entitled to judgment as a matter of law in its favor against CTT as to the Count II breach of guaranty cause of action.[8]

### B. *Damages Recoverable.*

As mentioned *supra*, BB&T seeks recovery of no fewer than eight categories of damages in connection with Trammel's breach of the Note, Renewal Note, and Forbearance Agreement;

---

[7] That said, Alabama courts have generally required a party seeking to enforce a guaranty to establish that the guarantor received notice of the debtor's default. *See, e.g., Lifeline Pharmaceuticals, LLC v. Hemophilia Infusion Managers, LLC*, 2012 WL 1014812 (S.D. Ala. Mar. 22, 2012) ("to recover under a … continuing guaranty, an additional element, notice to the guarantor of the debtor's default, must be proved") (citation omitted). Here, however, the Guaranty provided that CTT "expressly waives presentment, demand, protest, and notice of dishonor of any such notes, drafts, debts, obligations and liabilities or other evidences of any such indebtedness, obligation or liability." (Stanton Aff., ¶ 5 Att. 3.) Such waivers are valid and enforceable under Alabama law. *See, e.g., Sharer v. Bend Millwork Systems, Inc.*, 600 So.2d 223, 226 (Ala. 1992) ("The language of the guaranty is controlling in determining whether the holder of the guaranty is under a duty to notify the guarantor of a default by the principal, and notice need not be given when the terms of the guaranty expressly dispense with the need for it."). In light of the unambiguous waiver of notice set forth in the Guaranty executed by CTT, the notice element drops out of the equation.

[8] It bears noting that, pursuant to the express terms of the Guaranty, BB&T was not obligated to pursue recovery against Trammel before seeking to collect from CTT. (*See* Stanton Aff., ¶ 5 Att. 3 ("This obligation and liability on the part of the undersigned shall be a primary, and not a secondary, obligation and liability, payable immediately upon demand without recourse first having been had by the Bank against the Borrower or any other guarantor, person, firm or corporation").) Such absolute guaranty provisions are enforceable under Alabama law. *See Pilalas v. Baldwin County Sav. and Loan Ass'n*, 549 So.2d 92, 94 (Ala. 1989) (under an "absolute guaranty, which is an unconditional undertaking by the guarantor to pay a debt at maturity if the borrower does not … a creditor may pursue his remedy against the guarantor even without first going against the borrower") (citation omitted); *Vision Bank v. 145, LLC*, 2011 WL 5289070, *4 n.4 (S.D. Ala. Nov. 4, 2011) (similar). Accordingly, had CTT raised a defense to enforcement of the Guaranty that BB&T had not first exhausted recovery efforts against Trammel, such an argument would have been unavailing, as a matter of Alabama law.

and CTT's breach of the Guaranty. The types of damages and amounts claimed are as follows: (i) unpaid principal balance of loan ($294,004.66); (ii) interest ($62,285.11);[9] (iii) late fees ($1,219.71);[10] (iv) appraisals and environmental testing expenses ($60,697.01); (v) property taxes and title work ($22,903.32); (vi) force-placed insurance ($5,096.05); (vii) attorney's fees associated with environmental testing ($16,403.89); and (viii) attorney's fees, expenses and costs associated with this litigation ($17,889.92). Categories (i), (ii), and (iii) are adequately established in the record, both as to the amounts incurred and BB&T's contractual right to recover same under the Renewal Note and Guaranty. Accordingly, plaintiff will be awarded a judgment against defendants Trammel and CTT, jointly and severally, in the amount of **$294,004.66** for unpaid principal, **$66,973.05** for accrued interest, and **$1,219.71** for late charges.

The remaining categories of damages require further discussion. First, with respect to property taxes and title work, as well as force-placed insurance, plaintiff has failed to explain why it contends those amounts are properly awarded as damages for Trammel's breach of the Note and CTT's breach of the Guaranty. The Court is left with no record basis establishing why BB&T paid those sums (and, as to force-placed insurance, whether it paid that amount at all)[11] and how BB&T claims those amounts are properly awarded as contract damages arising from

---

[9] The interest figure quoted in plaintiff's summary judgment filings is current as of September 9, 2016. By the terms of the Renewal Note, interest continues to accrue on the unpaid principal at a fixed annual rate of 7%, computed using a 360-day year. (Stanton Aff., Att. 2.) That rate and principal balance yield an interest accrual of $57.17 per day. Thus, calculated through the present, the total accrued interest is $62,285.11 (as of September 9, 2016) plus $4,687.94 (which equals $57.17 per day times the 82 days that have elapsed since September 9, 2016), or $66,973.05.

[10] The original Note expressly provided for imposition of a late charge of the lesser of $100 or 5% of the payment in default, each time the borrower was more than nine days late in making payment. (Stanton Aff., Att. 1.) BB&T's evidence shows that the total late charges accrued by Trammel under the Note were $1,219.71. (Stanton Aff., ¶ 8.)

[11] BB&T relies on the Affidavit of Senior Vice President William V. Stanton to quantify its damages. In that Affidavit, Stanton states that "[t]rue and correct redacted copies of the bills and invoices showing the amounts incurred and paid by BB&T for the … hazard insurance premiums are attached hereto as **Attachment 8**." (Stanton Aff., ¶ 16.) The Court has carefully reviewed the seven-page exhibit labeled "Attachment 8," and finds nothing therein that would relate to force-placed hazard insurance bills paid by BB&T.

Trammel's breach of the Note and CTT's breach of the Guaranty.  BB&T identifies no provision in either agreement that it contends entitles it to recover those amounts in the event of default by Trammel or CTT.[12]  Accordingly, plaintiff has not met its burden of showing by a preponderance of the evidence that those amounts are properly awarded as damages for Counts I and II.

Second, with regard to environmental testing and appraisals, BB&T seeks an additional $60,697.01 in damages, plus another $16,403.89 for attorney's fees related to that environmental testing.  The record shows that BB&T hired AerostarSES and Terracon Consultants to perform environmental testing at the 1155 Telegraph Road site in the second half of 2014.  (Stanton Aff., Att. 7.)  The record also shows that BB&T retained an Atlanta law firm, at billing rates of $324.00 to $436.50 per hour, to review environmental reports, identify regulatory requirements, correspond with various actors, and advise BB&T about environmental issues.  (Kirkland Aff. (doc. 42, Exh. D), ¶ 3.)  But BB&T has made no specific showing to explain why it took these steps.[13]  Nor has plaintiff explained why it believes those expenses are properly awarded as

---

[12] At most, plaintiff offers the following statement in the Stanton Affidavit: "BB&T was required to pay property taxes and hazard insurance premiums that were not paid by Trammel or CTT in order to protect its security interest in the Property." (Stanton Aff., ¶ 16.) That may be true under the terms of the Mortgage; however, plaintiff identifies no provision in the Mortgage on which it relies.  More fundamentally, Counts I and II are about breaches of the Note and Guaranty, not enforcement of the Mortgage.  Plaintiff offers neither law nor facts to show why expenses incurred as to collateral secured by the Mortgage are properly awarded as damages for breach of the Note and Guaranty in an action where plaintiff does not seek to enforce the Mortgage.  Plaintiff points in its brief to language in the Note and Guaranty obligating Trammel and CTT to pay "costs of collection" (Stanton Aff., Atts. 2 & 3); however, it proffers neither authority nor reasoning that would justify the classification of these expenses as "costs of collection," particularly where the record reveals no efforts by BB&T to foreclose on its security interest in the mortgaged premises.  There is simply no indication in the record that BB&T paid property taxes on the property in furtherance of "collection" activities.  At any rate, Stanton's conclusory statement cannot be credited on summary judgment because plaintiff submits no evidence that Trammel and CTT refused to pay property taxes and insurance premiums, much less any legal "requirement" that BB&T must cover those expenses in accordance with the terms of the Note and Guaranty.

[13] Once again, plaintiff relies exclusively on a general, conclusory statement in the Stanton Affidavit that "BB&T is required to obtain appraisals and environmental assessments of the Property in order to evaluate the possibility of foreclosing on the Property." (Stanton Aff., ¶ 15.)  Once again, the legal and factual bases of any such "requirement" are left unexplained.  At any rate, the Court has no information and no reason to believe that BB&T has ever foreclosed on the mortgaged premises.  The record is devoid of any explanation as to why not, or why (Continued)

damages for Trammel's breach of the Note and CTT's breach of the Guaranty.  Again, Counts I and II are not causes of action to enforce the Mortgage; therefore, it is unclear why plaintiff claims Mortgage-related expenses in connection with those Counts.

Plaintiff's summary judgment brief does not identify any provision in the Note or Guaranty that authorizes recovery of environmental testing expenses for separate mortgaged property in the event of a breach by a borrower or guarantor, especially when neither borrower nor guarantor is the mortgagor.  Instead, BB&T points only to a provision in the Mortgage stating that BB&T "may advance to [Prowler Supply] such monies as may be necessary … to pay for any work done upon said Property."  (Stanton Aff., Att. 5, ¶ 7.)  But plaintiff fails to address how advancing monies to Prowler Supply under the Mortgage would give rise to a right to recover those funds against Trammel and CTT under the Note and Guaranty.  Nor does plaintiff explain how the subject environmental assessment expenses were "necessary," how they fit within the meaning of "work done upon said Property" for purposes of enforcing the Mortgage, or how this set of circumstances could be viewed as BB&T "advancing" funds to Prowler Supply that Trammel and CTT (not Prowler Supply) must repay.[14]  With no showing by BB&T that the environmental testing and appraisal expenses are properly awarded as damages against Trammel for breach of the Note and CTT for breach of the Guaranty, neither those expenses nor the attorney's fees associated with such testing are proper components of a damage award as to Counts I and II.[15]  As such, plaintiff's claim for $60,697.01 in appraisal and

---

BB&T incurred considerable foreclosure-related expenses (that it now seeks to pass on to the borrower and guarantor, not the mortgagor) for property on which it has never foreclosed.

[14]    Insofar as BB&T may intend to rely on provisions in the Note and Guaranty obligating Trammel and CTT to pay "costs of collection," such an argument would again fail in the absence of any evidence or argument showing how environmental testing expenses on mortgaged property for which BB&T did not initiate foreclosure proceedings and as to which a third party (not Trammel or CTT) is the mortgagor could reasonably be deemed "costs of collection" within the meaning of the subject documents.

[15]    With respect to the attorney's fees associated with the environmental testing, BB&T's showing falls short for another reason.  As discussed *infra*, Alabama law imputes a reasonableness limitation into any contractual fee-shifting provision.  Plaintiff has not shown that it was reasonable to retain separate counsel to review the environmental reports, correspond with the various actors and advise BB&T on the environmental status of the mortgaged property.  Nor (Continued)

-10-

environmental testing expenses, along with $16,403.89 in associated legal fees, is disallowed for lack of sufficient factual or legal foundation.

The final category of damages sought by BB&T is its attorney's fees, expenses and court costs associated with this litigation. "Alabama follows the American rule, whereby attorney fees may be recovered if they are provided for by statute or by contract …." *Jones v. Regions Bank*, 25 So.3d 427, 441 (Ala. 2009) (citations omitted); *see also Battle v. City of Birmingham*, 656 So.2d 344, 347 (Ala. 1995) (same). The Note and Guaranty unequivocally obligated Trammel and CTT to pay all costs of collection, including BB&T's reasonable attorney's fees.[16] Applicable law is clear that "provisions regarding reasonable attorney's fees are terms of the contracts susceptible to breach." *Army Aviation Center Federal Credit Union v. Poston*, 460 So.2d 139, 141 (Ala. 1984). Thus, BB&T is entitled to recover its reasonable attorney's fees incurred in pursuing this litigation against Trammel and CTT to collect monies owed to BB&T under the Renewal Note and Guaranty.

As a general proposition, "[t]he starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable

---

has plaintiff shown that it was reasonably necessary to hire Atlanta-based counsel to perform nearly 50 hours of work at an hourly rate of between $324.00 and $436.50. There has been no showing, for example, that the legal work at issue was so specialized that BB&T could not have retained a local firm at a much lower hourly rate to perform the same tasks. Without proof that the "reasonableness" limitation imposed by Alabama law is satisfied, those attorney's fees could not be awarded to BB&T even if it had made a showing that environmental testing expenses for mortgaged property owned by a third party were recoverable under the Note and Guaranty.

[16]     In particular, the Renewal Note included a provision whereby Trammel agreed that "[i]f this Note is placed with an attorney for collection, Borrowers, jointly and severally, agree to pay, in addition to principal and interest, all costs of collection, including but not limited to reasonable attorney's fees." (Stanton Aff., Att. 2, at 3.) Likewise, in the Guaranty, CTT agreed that it "shall be responsible for and shall reimburse the Bank for all costs and expenses (including reasonable attorneys' fees) incurred by the Bank in connection with the enforcement of this Guaranty." (Stanton Aff., Att. 3, at 2.) Both contracts are on their face limited to recovery of "reasonable" attorney's fees. Even if such a limitation were not stated by contract, it would be implied by Alabama law. *See, e.g., Willow Lake Residential Ass'n, Inc. v. Juliano*, 80 So.3d 226, 241 (Ala.Civ.App. 2010) ("Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation."); *Branch Banking and Trust Co. v. Howard*, 2013 WL 951652, *6 (S.D. Ala. Mar. 8, 2013) ("Alabama law imposes a reasonableness constraint on all fee-shifting contracts, as a matter of public policy.").

hourly rate. … The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (internal citations and quotation marks omitted). "The court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit." *Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006). Upon careful review of BB&T's extensive evidentiary submission relating to the attorney's fees incurred in this matter (including hourly rates, attorney experience levels, and itemized invoices), the Court finds that the $14,733.30 in attorney's fees sought by BB&T is reasonable, and that the costs and expenses totaling $3,156.62 are likewise reasonable and reimbursable as costs of collection under the Renewal Note and Guaranty.[17] On this showing, plaintiff is entitled to recover **$14,733.30** in attorney's fees and **$3,156.62** in costs and expenses associated with BB&T's collection activities relating to the Note and Guaranty.

All told, then, the damages award on Counts I and II consists of **$294,004.66** for unpaid principal, **$66,973.05** for accrued interest, **$1,219.71** for late charges, **$14,733.30** in attorney's fees and **$3,156.62** in litigation costs and expenses, for a grand total of **$380,087.34**.

### IV. Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. Plaintiff's Motion for Summary Judgment (doc. 41) is **granted in part**, and **denied in part**;
2. The Motion is **granted** as to Count I (breach of promissory note against James P. Trammel) and Count II (breach of guaranty against CTT Properties, LLC);
3. Plaintiff has established its entitlement to a judgment against Trammel and CTT, jointly and severally, in the amount of **$380,087.34** for Counts I and II. There being no remaining claims or issues joined against these defendants, the Court will enter a separate judgment at this time as to those counts;

---

[17] With respect to attorney's fees, BB&T's evidentiary submission confirms that its counsel expended 82.1 hours working on the dispute between BB&T and Trammel/CTT over a period spanning from November 2013 to September 2016, with highly experienced litigation counsel billing at hourly rates of $165 to $200. (Hargett Aff. (doc. 42, Exh. C), ¶¶ 2-3, 6.)

4.   Plaintiff did not move for summary judgment as to Count III (breach of assignment of rents and demand for rents against defendant Tire Centers, LLC). That cause of action remains in play, and this action will move forward as between BB&T and Tire Centers on Count III in accordance with the Scheduling Order (doc. 32) entered on April 22, 2016. Thus, this action remains set for Final Pretrial Conference before the undersigned on **January 17, 2017** at **10:30 a.m.**, with bench trial to follow during **February 2017**; and

5.   Still nominally involved in this litigation as a defendant is Prowler Supply, Inc. The Court cannot discern from the pleadings why Prowler Supply is a named party herein. After all, none of the causes of action asserted in the Complaint purport to seek relief from Prowler Supply.[18] Accordingly, plaintiff is **ordered** to **show cause**, on or before **December 14, 2016**, why Prowler Supply should not be dismissed from these proceedings as a party defendant.

DONE and ORDERED this 1st day of December, 2016.

s/WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[18] Prowler Supply itself raised this issue many months ago, albeit not in the form of an appropriate motion to bring the issue to a head. In the Report of Parties' Planning Meeting (doc. 30) filed on April 14, 2016, defendants observed as follows: "The Complaint expresses no prayer for relief and seeks no recovery from Prowler. Although it executed the Assignment of Rents, such rents are now being paid by the Tenant/Defendant Tire Center, LLC, hence, it should be dismissed." (Doc. 30, at 2.)